**TRAVELERS INSURANCE COMPANY, Insurance Carrier, and Todd Shipyards Corporation, Employer, Plaintiffs,**

v.

**John D. McLELLAN, Jr., Deputy Commissioner, Second Compensation District, U. S. Department of Labor, and Henry Kulagowski, Defendants.**

No. 68–Civ.–673.

United States District Court
E. D. New York.
July 28, 1969.

Kirlin, Campbell & Keating, New York City, for plaintiffs; James B. Magnor, New York City, of counsel.

Vincent T. McCarthy, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., for defendant McLellan; by Louis E. Greco, Atty. in Charge, Admiralty & Shipping Section, Dept. of Justice, New York City, of counsel.

Israel & Leeds, New York City, for defendant Kulagowski; by Cornelius V. Gallagher, New York City, of counsel.

JUDD, District Judge.

## MEMORANDUM

This is an action under Section 21 of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 921, to set aside and enjoin an order of the Deputy Commissioner awarding compensation to defendant Kulagowski.

The matter has been submitted to the court on a motion for summary judgment by the plaintiffs, and on a cross-motion for summary judgment by the defendant Deputy Commissioner.

■ The action is in the nature of a review of the administrative decision, and is governed by the standards set forth in the Administrative Procedure Act, 5 U.S.C. § 706. As said in O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 508, 71 S.Ct. 470, 472, 95 L.Ed. 483 (1951), "the findings are to be accepted unless they are unsupported by substantial evidence on the record considered as a whole." The inferences drawn by the Deputy Commissioner from the objective facts as found by him, should be sustained unless "irrational or without substantial evidence on the record as a whole." O'Keeffe v. Smith, Hinchman & Grylls Ass'ns., Inc., 380 U.S. 359, 363, 85 S.Ct. 1012, 1015, 13 L.Ed.2d 895 (1965).

Realizing the difficulty of a reversal on the facts, plaintiffs emphasize an attack on the fairness of the Deputy Commissioner.

The facts will be set forth briefly. The defendant Kulagowski, a native of Poland, had been an outside machinist at Todd Shipyards since June, 1963, shortly after he came to this country. As a result of the high level of noise incident to this employment, he began to notice an impairment of his hearing in early 1967, as well as ringing in his ears (tinnitus). He filed a claim for compensation with the office of the Deputy Commissioner in June, 1967. A medical report to the Bureau of Employees' Compensation on June 15, 1967 stated that Kulagowski had "a bilateral, profound hearing loss." After a conference with a claims examiner in the Bureau on November 14,

1967, the employer and the carrier agreed that he had suffered a 26% binaural deterioration of his hearing, and undertook to pay voluntarily a schedule award of 52 weeks at $70.00 per week, for loss of hearing of one ear. 33 U.S. C. § 908, subd.(c) (13). He had worked in his usual capacity with Todd after the onset of his hearing difficulties, but on December 12, 1967, he was released or fired, because Todd's personnel director thought that a hearing loss in excess of 18% made a man a hazard to other employees. He applied for work in two other shipyards, but was refused employment when he told them that Todd had let him go because of his loss of hearing. This much is undisputed.

After Kulagowski's discharge, his claim was scheduled for an evidentiary hearing.

Dr. Berg, a specialist in neurology and psychiatry, testified that Kulagowski suffered "traumatic conversion hysteria, anxiety state, severe" as well as loss of hearing. He testified that the emotional condition "was initiated and triggered by the episode of being fired and preceded his being fired."

Dr. Berg testified that a "conversion hysteria is an emotional state which arises as against and on top of an organic defect or an organic injury."

There is little substance to plaintiffs' claim that Kulagowski's emotional disturbance is not compensable because it arose from his being discharged, and not from his employment.

The Deputy Commissioner found that Kulagowski had suffered an employment-related emotional disturbance, characterized as "anxiety state with conversion hysteria," which resulted in permanent partial disability.

The reasoning, which seems logical, was that if his work caused his hearing loss, and his hearing loss caused his discharge, and his discharge caused his conversion hysteria, then his work caused his conversion hysteria.

The plaintiffs attack the award on five basic grounds:

(1) The record discloses that the Deputy Commissioner pre-judged the case.

(2) The emotional disturbance did not arise out of his employment, but arose subsequently. No relief could be granted if his discharge was the precipitating cause.

(3) There is no proof that Kulagowski is unable to work at a job for which he is trained.

(4) The emotional disturbance did not occur on the navigable waters of the United States, and therefore the Deputy Commissioner lacked jurisdiction over the claim.

(5) The Deputy Commissioner had no jurisdiction to base an award on Kulagowski's discharge.

The contention of pre-judgment will be dealt with after the other contentions are discussed.

Plaintiffs point out that Kulagowski testified that he was satisfied with his job and his position at Todd's. They argue from this that, if the dismissal was justified by his incapacity from loss of hearing, and the dismissal was the real precipitating cause of his emotional problems, those problems did not arise out of his employment. Such a narrow interpretation of the causation of a disability cannot be sustained.

Mr. Kulagowski's root problem is his loss of hearing. All evidence in the record indicates that he was a man of high initiative. He came to this country to make a new life for himself, and appears to have adjusted very quickly to his new environment. Indeed, he was working at two jobs, in order to support his widowed mother who remained in Poland. When he filed a claim for a partial disability due to loss of hearing, he brought his physical handicap to the attention of Todd's personnel department. Accepting the testimony of Todd's personnel manager, he was dismissed because his loss of hearing endangered his fellow employees as well as himself. The dismissal, and the inability to find other shipyard work,

354

led to the mental disturbance. The causal basis of all Kulagowski's problems was his loss of hearing. The fact that either time or events intervene does not compel a finding that the emotional disability was causally unrelated to Kulagowski's employment. See United Painters & Decorators v. Britton, 112 U.S.App.D.C. 236, 301 F.2d 560 (1962), where an employee suffered an injury in 1943 which caused a "chronic infection of the kidneys, which became acute from time to time and led to an arteriosclerotic heart disease." Strenuous physical activities while employed in a different capacity for a different employer led to his death from a heart seizure. The court held that the 1943 employer was properly found liable for a portion of the award to the employee's widow.

In Banks v. Chicago Grain Trimmers Ass'n, 390 U.S. 459, 88 S.Ct. 1140, 20 L. Ed.2d 30 (1968), the deputy commissioner was sustained in his finding that the employee's fatal fall, which occurred at home, was precipitated by an injury he suffered at work earlier in the day.

■ These cases demonstrate that the mere intervention of some non-employment related occurrence will not preclude a compensation award. In this case, Dr. Berg's testimony that the seeds of Kulagowski's emotional disorder existed prior to his discharge, and that it was precipitated by his discharge, are substantial evidentiary support for the Deputy Commissioner's finding that the disorder was work-related, and caused by the hearing loss he suffered while working for Todd.

■ Plaintiffs next contend that no showing was made by Kulagowski that he was unable to procure other employment. The evidence is undisputed that immediately after his discharge from Todd, he sought employment with other shipyards. The Deputy Commissioner concluded that this was a showing of inability to procure employment and that his inability to obtain employment was due to his work-related physical disability. This is evidence of a disability as defined in the Act. 33 U.S.C.A. § 902(10). The evidence meets the standards of McGrath Corp. v. Hughes, 289 F.2d 403 (2d Cir.1961), cited by the plaintiffs, where a finding of inability to obtain employment was sustained. As the court pointed out in Army and Air Force Exchange Service v. Neuman, 278 F.Supp. 865 (W.D.La.1967), imposing the burden on a claimant of showing inability to procure work would require him to prove a negative fact. Kulagowski is a ship worker, and has shown that he is unlikely to procure employment in his field. The fact that he had in the past performed other kinds of work was before the Deputy Commissioner, but no testimony was offered by plaintiffs concerning his present fitness for other jobs. Having been told by Todd that he was a hazard to the other employees, and by Dr. Berg that he had a causally-related partial disability, the Deputy Commissioner's conclusion that Kulagowski was unable to find other employment was a reasonable one on the record before this court, and supported by substantial evidence.

■ Plaintiffs' contention that the injury did not occur on the navigable waters is untenable. Kulagowski testified that his work was done on ships which were in the water and occasionally in drydock. Coverage for disability resulting from injuries "occurring upon the navigable waters of the United States (including any drydock)" is provided for in 33 U.S.C.A. § 903. The Deputy Commissioner thus had jurisdiction over the claim.

■ Plaintiffs' further contention, that the Deputy Commissioner had no jurisdiction because the discharge was authorized under a union contract, is also without merit. The discharge was based on an employment-connected injury, and was only one of the circumstances which caused the compensable disability.

*The Alleged Pre-Judgment of the Case*

The plaintiffs assert that during the course of the hearing on Kulagowski's

claim, the Deputy Commissioner came to the conclusion that Kulagowski had been fired from the shipyard because he had filed the earlier claim for compensation, and he was therefore influenced in the claimant's favor. This has some support in the record, but plaintiffs' inference of pre-judgment is wrong.

Kulagowski testified at the first hearing that he was told by Mr. Hawes, Todd's personnel director, that the reason for his discharge was that he had "complained to Todd Shipyards about the hearing"; that he had stated, "Why pick on me, because it's a lot of people working here in the yard with hearing box?" Mr. Hawes' answer was, "It is none of your business; you're fired." The Deputy Commissioner was justified in believing these statements until they were disproved. In fact, they never were completely disproved. Counsel asserted that Todd did not have a policy of discharging employees as a penalty for filing compensation claims. The policy nevertheless permitted workmen with hearing losses to stay on the job until they filed compensation claims, for Mr. Hawes said that it was only by reason of the compensation claim that he became aware of the disability. If he had not filed a claim, "I wouldn't be aware of it." In Todd's reply to the Deputy Commissioner's post-hearing letter, the only arbitration award it cites as supporting discharge for hearing loss is one in which the employee had filed a successful claim for hearing loss under the New Jersey Workmen's Compensation Law.

There was no offer of testimony that Kulagowski had caused any harm to any other workman, apart from the general policy of firing employees in the Brooklyn yard who suffer a hearing loss in excess of 20%. The policy of discharging an employee on account of a hearing loss was not set forth in Todd's Penalty and Discharge Regulations, and it was not mentioned to Kulagowski when he sought a medical examination in the summer of 1967. In fact, the report of plaintiffs' doctor said that tinnitus was not disabling in machinists' work. Mr. Hawes did not deny that he had told Kulagowski that it was none of his business whether other men with hearing losses were permitted to work. When a question was posed to him whether others with the same problem were kept at work, plaintiffs' counsel objected to the question as immaterial. It may have been immaterial to the issue of Kulagowski's conversion hysteria, though there was testimony that a sense of being unfairly treated would reinforce the symptoms of conversion hysteria. The objection was sustained, a ruling which provides evidence of the Deputy Commissioner's fairness.

The Deputy Commissioner explained on the record at the second hearing day that if there were substance to the claim that the discharge was triggered by the compensation award, he "would be bound to make this information known to the Bureau in Washington and to the Secretary of Labor." (Tr. 206). The Deputy Commissioner gave Todd a fair opportunity to explain the release of Kulagowski.

■ On the whole record, it is not possible for the court to find that the Deputy Commissioner had so prejudged the case as to make his decision unfair, arbitrary or capricious. 5 U.S.C.A. § 706(2) (A).

Reading of the whole record shows that the hearing was fair in every respect. The Deputy Commissioner deserved to be spared any attack on his professional competennce.

■ The Deputy Commissioner has a duty to "take such further action as he considers will properly protect the rights of all parties." 33 U.S.C. § 914 (h) (2). This must include the right to inquire about employer practices which appear to penalize compensation claimants.

Counsel is often persuaded of the rightness of his own cause, but on this record there is no objective basis for a charge of pre-judgment or unfairness.

*Summary and Conclusion*

1.   The Deputy Commissioner had jurisdiction over Henry Kulagowski's claim for compensation.

2.   There is substantial evidence in the record to support the Deputy Commissioner's finding that Kulagowski suffers an emotional disorder; that the emotional disorder is causally related to his employment at Todd Shipyards; that as a result of this emotional disorder he is disabled; and that this disability is permanent and partial.

3.   The Deputy Commissioner did not demonstrate any pre-judgment of the claim; any questions he may have raised concerning Todd's firing practices were proper; and Todd was given, and accepted, the opportunity of attempting to explain its procedure.

Plaintiffs' motion for summary judgment is denied. Defendant Deputy Commissioner's cross-motion for summary judgment is granted.