**Robert WILLETTE**

v.

**STATLER TISSUE CORP.**

Supreme Judicial Court of Maine.

Jan. 27, 1975.

Wathen & Wathen by Jessie H. Briggs, Warren E. Winslow, Jr., Augusta, for plaintiff.

Mahoney, Robinson, Mahoney & Norman by Robert F. Hanson, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DUFRESNE, Chief Justice.

This case is here on appeal by Statler Tissue Corporation (Statler), self insurer, from a pro forma decree of the Superior Court, Kennebec County, which implemented an award of compensation by the Industrial Accident Commission.

The record on appeal indicates the following facts. On January 14, 1972 the appellee, Robert Willette, was employed as a "beater man" by the Statler Tissue Corporation. On that date, while attempting to repair a machine, Willette slipped and, in trying to prevent a fall, stretched out to grab the rung of a ladder above him and did reach it. In the process, however, he experienced a sharp pain in his shoulder. Having received some first aid training, he ascribed the ensuing malaise and loss of control of his arm to a dislocation of the shoulder. Willette testified that he was able to reduce the shoulder to its proper position by himself. After doing so, Willette reported the incident to a superior, but continued to work for the rest of the day. He did not lose any work-time as a result of this occurrence. Willette testified before the Commissioner that this incident was his first experience with shoulder dislocation.

On March 24, 1972 a second dislocation took place. At that time, Willette was climbing a spiral staircase when he reached to a railing above him. The reaching action resulted in the dislocation. Again, he reset the shoulder by himself. As was the case after the first episode, he lost no time from work as a result.

The March 24 incident was followed by several more dislocations, none of which were work-related. As with the episodes of January 14 and March 24, Willette was able to reduce these dislocations by himself.

In March, 1973, Willette left his job at Statler for reasons unrelated to his physical condition. On May 31, 1973, while working for F. H. Smith Corporation, he experienced the final dislocation relevant here. This incident occurred while he and a fellow employee were carrying a 100 pound slab of sheet rock. Contrary to the situation which prevailed at the time of the

previous episodes, in this instance Willette was unable to put his shoulder back in place. After x-rays were taken, the shoulder was set by a physician.

Dr. James R. McKendry, who treated the appellee after the incidents described above, and who was a witness for the appellee at the hearing before the Commissioner, diagnosed the condition as an "interior dislocation of his left shoulder." Surgical intervention was necessary to correct the condition and an operation was performed on June 19, 1973. The doctor testified that, as a result of the dislocations, Willette had a 10% permanent disability.

Willette filed petitions for award of compensation, relying on all three incidents as the bases of his claim. All the petitions were filed within two years of the injuries as required by 39 M.R.S.A. § 95.

In its decree, the Commission stated its ultimate conclusion as follows:

"The Commission finds that Robert Willette received a personal injury by accident on January 14, 1972 arising out of and in the course of his employment. He was totally disabled from June 1, 1973 to September 14, 1973 inclusive; then 50% incapacitated as of September 14, 1973. The Commission finds that petitioner's disability is the direct result of the accidental injury occurring on January 14, 1972. The injury received on March 24, 1972 is merely a recurrence of the first injury. The accidental injury received on May 31, 1973 while working for F. H. Smith Corp. is also a recurrence of the first injury received on January 14, 1972. The Commission further finds that the incidents of March 24, 1972 and May 31, 1973 did not contribute to the causation of Mr. Willette's disabling condition. These incidents were not an intervening cause of the disability —they were the proximate and natural result of the first injury."

As a result of the above findings of fact, the Commission held that Statler, the employer at the time of the first incident, was solely liable for the full amount of compensation due Willette. Statler appeals from the Superior Court order incorporating the Commission's decision. We deny the appeal.

The determination of liability was based upon an application of the so-called Massachusetts-Michigan rule in successive injury cases. The rule has been stated in the following manner.

"The Massachusetts-Michigan rule in successive-injury cases is to place full liability upon the carrier covering the risk at the time of the most recent injury that bears a causal relation to the disability.

*"If the second injury takes the form merely of a recurrence of the first, and if the second injury does not contribute even slightly to the causation of the disabling condition, the insurer on the risk at the time of the original injury remains liable for the second.*

\*    \*    \*    \*    \*    \*

"On the other hand, if the second incident contributes independently to the injury, the second insurer is solely liable, even if the injury would have been less severe in the absence of the prior condition, and even if the prior injury contributed the major part to the final condition." 3 Larson's Workmen's Compensation Law, § 95.12, pp. 508.130–508.-133. (Emphasis added).

See also, Rock's Case, 1948, 323 Mass. 428, 82 N.E.2d 616; Peters' Case, 1954, 331 Mass. 188, 118 N.E.2d 75; Sutherland's Case, 1974, Mass.App., 308 N.E.2d 775; Mullins v. Dura Corporation, Motor State Prod. Div., 1973, 46 Mich.App. 52, 207 N. W.2d 404.

The determination of the Commission which Statler claims was erroneous is its holding that the incident of January 14, 1972 was the sole cause of Willette's disability and that the dislocations which followed were mere recurrences which did

not "contribute even slightly to the causation of the disabling condition." [1]

The appellant states two grounds in support of its allegation of error. First, it is claimed that it was an error of law to hold the employer at the time of the first incident liable for the full amount of compensation when that incident was not a compensated-injury-incident, since the incident was not followed in short order by loss of wages and work-time and no disability was manifested in terms of loss of time and wages until after the later incident. Secondly, the appellant claims that the Commission's conclusion on the issue of causation could only be reached by disregarding ". . . the overwhelming and undisputed evidence concerning the causal connection between the May 31, 1973 accident [which took place while Willette was in the employ of F. H. Smith Corp.] and the petitioner's disability . . . ."

Treating these claims individually, we believe that the appellant's first argument obscures the central issue which must be determined in a successive-injury case.

"The issue for determination in compensation cases of this type is whether the disability of the employee has causal connection with the injury he sustained. When it is shown to have causal connection, the employee . . . is entitled to recover." Finley v. Hardware Mutual Insurance Co., 1959, 237 La. 214, 110 So.2d 583, 586.

*See e. g.* Rock's Case, 1948, 323 Mass. 428, 82 N.E.2d 616; Hall v. Spot Martin, Inc., 1957, Mo., 304 S.W.2d 844.

We fail to see the relationship between the proposed threshold requirement of immediate manifestation of disability in the wage-loss sense and the ultimate determination of causation. The fact that Willette lost no work-time after the injury of January 14, 1972 is in no way dispositive of the issue, if the ultimate disability can be traced by competent evidence, including medical testimony, to that incident. In reaching this conclusion, we find support in Finley v. Hardware Mutual Insurance Co., supra, 110 So.2d at 586, where the Louisiana Supreme Court stated:

"Nor can we agree with the Court of Appeal in its legal conclusion that an employee totally disabled as a result of an initial injury is to be denied compensation because he returned to work following the injury and was able to perform the duties of his employment apparently without pain or handicap."

\*   \*   \*   \*   \*   \*

". . . [T]he failure of the employee to establish that he suffered pain during the performance of the subsequent work . . . does not of itself preclude recovery of compensation when the preponderating expert testimony . . . sustains the employee's claim that his disability emanates from the injury received in the accident."

Since, under the facts of this case, the absence of disability in the wage-loss sense bears no necessary relationship to the ultimate issue of causation, we reject the appellant's argument in this phase of the appeal.

We now turn to the appellant's claim that the factual determination of the Commission on the issue of causation was contrary to the evidence presented at the hearing. Our review of this matter is limited by statute (39 M.R.S.A. § 99) and by the decisions of this Court interpreting such legislation.

"We recognize that on appeal from a decree of an Industrial Accident Com-

---

1. Since the application of the Massachusetts-Michigan rule by the Commission in the instant case did not result in fastening any responsibility whatsoever for the plaintiff's disability upon the second employer, we need not decide at this time whether we will adopt the rule in a case where the subsequent incidents are proven to be causally contributing factors to some degree to the claimant's disability.

missioner the Commissioner's findings of fact are final if they are supported by competent evidence and reasonable inferences which may be drawn therefrom. 39 M.R.S.A. § 99; Soucy v. Fraser Paper, Limited, 1970, Me., 267 A.2d 919. Disability due to an industrial accident, the extent thereof, and the issue of causal relation between the accident and the disability are questions of fact . . . ." Crosby v. Grandview Nursing Home, 1972, Me., 290 A.2d 375, 379.

See also, MacLeod v. Great Northern Paper Company, 1970, Me., 268 A.2d 488; Moores v. Structural Concrete Corp. of Maine, 1969, Me., 255 A.2d 892; Tiko v. Hiram Ricker & Sons, Inc., 1969, Me., 251 A.2d 510; Bernier v. Coca-Cola Bottling Plants, Inc., 1969, Me., 250 A.2d 820.

■ In determining whether the findings of the Commission were supported by "some competent evidence" we must turn to the record of the proceedings. We note, first, that Willette's testimony indicates that he had never experienced a shoulder dislocation prior to the incident of January 14, 1972. It also is clear that from that date until May 31, 1973 he experienced several such incidents. The only medical testimony taken at the hearing, that of Dr. McKendry, points out that the cause of the first dislocation was "a combination of probably his weight applied to the shoulder plus the position he got into, [while] the subsequent dislocations were primarily related to positions into which the arm was placed in the process of doing something on the job." The difference between the first dislocation and those that followed was emphasized further in Dr. McKendry's testimony.

"Q. Was there any aggravation of the condition by each subsequent dislocation?

"A. I think not. I think the state of the shoulder was probably much the same after the original injury. In other words susceptible to redislocating . . . .

"Q. So do I understand you to say, Doctor, if there is a villain in this whole plot it is the January 1972 incident?

"A. The original incident, yes.

"Q. So that in March, March 24, 1972, if in fact there was a dislocation at that time reset by the individual himself, there was no aggravation and no disability?

"A. Well—

"Q. Let's take disability first.

"A. No apparent further disability, no. Aggravation—it is typical of, in a general way, of individuals who repeatedly dislocate their shoulders, that it is generally easier to redislocate as time goes along."

We believe that the overall history of the appellee's condition, taken in conjunction with the medical testimony, supplied ample support for the Commission's findings. We believe the fact that Willette had never experienced a dislocation prior to January 14, 1972, coupled with the fact that thereafter he was plagued by several such occurrences, supports the conclusion that the first incident was the root cause of the problem. The testimony of the doctor that Willette's shoulder was much the same after the first injury and susceptible to re-dislocation allowed the Commission to find that the incidents occurring after January 14, 1972 were mere recurrences, or acute symptoms, manifesting the structural damage suffered originally. For a like determination, see, Hall v. Spot Martin, Inc., 1957, Mo., 304 S.W.2d 844, 852.

■■ The crucial question in the case was whether the first incident of January 14, 1972 was the sole cause of the plaintiff's disability following the re-dislocation of his shoulder on May 31, 1973 and whether the subsequent incidents including that on May 31, 1973 in no way contributed even slightly to the plaintiff's ultimate disability. There was evidence in the rec-

ord tending to support both the causal connection between the first incident and the absence of any intervening causative effect even in a slight degree between the subsequent incidents and the plaintiff's ultimate disability. The weight of the evidence and its credibility was for the trier of the facts, the Commission. Whether the claimant in a Workmen's Compensation case has sustained his burden of proof is also a question of fact which, if there is competent evidence on which to base the decision in the case, cannot be disturbed by this Court. Cote v. Allied Chemical Coatings, Inc., 1969, Me., 249 A.2d 528. See also, Baker's Case, 1947, 143 Me. 103, 55 A.2d 780; Robitaille's Case, 1943, 140 Me. 121, 34 A.2d 473; McCarthy's Case, 1918, 231 Mass. 259, 120 N.E. 852.

The entry will be

Appeal denied.

Ordered that $350.00 to cover fees and expenses of counsel for the petitioner be, and is, allowed, to be paid by Appellant, Statler Tissue Corp., to the Appellee, Robert Willette.

All Justices concurring.