Richard LANDRY

v.

GREAT NORTHERN PAPER COMPA-
NY and/or Employers Fire
Insurance Company.

Supreme Judicial Court of Maine.

March 29, 1978.

Twitchell, Gray & Linscott by Pamela D. Chute (orally), Frederick J. Badger, Bangor, for plaintiff.

Mitchell, Ballou & Keith by Peter Weatherbee (orally), John W. Ballou, James E. Mitchell, Bangor, for defendant.

Before POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

On February 10, 1972, petitioner Richard Landry filed with the Industrial Accident Commission a petition for award of compensation, and on December 31, 1975, he filed a petition to determine the extent of his permanent impairment. After hearings,

---

the Commission on January 24, 1977 issued separate decrees dismissing each petition. Petitioner has appealed from the judgments on the Commission's decrees entered pro forma in the Superior Court.

We deny each appeal.

On October 11, 1971, petitioner, while working as an employee at the Great Northern Paper Company, slipped in the company's grinder room and fell over backwards. Petitioner's claim is that he then sustained an injury to his back having causal relation to back difficulties petitioner was suffering when he filed his petitions.

In 1973 and 1976 the Commission heard the testimony of petitioner, three orthopedist doctors, and a surgeon. On the basis of this testimony, the Commission concluded:

> "Mr. Landry experienced some back pain following his accident on October 11, 1971, which did not disable him. His subsequent complaints are of uncertain origin. The evidence does not convince us that the occurrence in 1971 resulted in any compensable injury. The Petition [for award] is hereby dismissed." [1]

Petitioner contends that the Commission's decision is not supported by competent evidence and that it disregards probative evidence favorable to petitioner. We disagree.

■ Since the Commission's decision was that petitioner failed to sustain his burden of proof to show an injury, the scope of our review is governed by 39 M.R.S.A. § 99. We considered that statutory provision in *Guerrette v. Fraser Paper, Ltd.,* Me., 348 A.2d 260 (1975), stating that its purpose was to "eliminate dismissal of petitions on the *unexplained* ground that a party has failed to sustain his burden of proof . . ." (emphasis supplied), by requiring the Commission to make "*specific* findings . . . upon which its order is predicated." (348 A.2d at 261, 262) An adequate foundation for appellate review is thus established since, given such specific findings by the Commission, this Court can evaluate whether they are supported by competent evidence in the record.

Here, the Commission made the specific findings that the fall "did not disable" petitioner and the petitioner's "subsequent complaints are of uncertain origin." [2] In relation to these conclusions, the Commission stated that:

> "In February 1972, . . . [petitioner] was examined by Dr. McGinn who received no history that Mr. Landry had injured his back as a result of a fall. His examination was essentially negative and he concluded that Mr. Landry had chronic low back aches."

In his testimony Dr. McGinn had explained the significance of his having "received no history." It was not that petitioner had not thought to mention it. Rather, Dr. McGinn had specifically asked petitioner whether he had ever suffered an injury to his back, and petitioner stated, as his only response to the question, that he had a chronic low backache.

---

1. The Commission's use of the word "compensable" to modify "injury" produces ambiguity. Three alternatives could be signified: (1) no injury at all within the meaning of the Act, (2) an injury not work-related or (3) a work-related injury involving no such work loss as to require payment of compensation. See *Kidder v. Coastal Construction Co., Inc.,* Me., 342 A.2d 729, 731 (1975).

   Reading the Commission's analysis in light of the total record, we are satisfied that the meaning of the Commission's ruling is that petitioner had failed to show that his fall on October 11, 1971 caused him to suffer any injury at all within the intendment of the Act. See, further, n.2, infra.

2. In light of the Commission's action in dismissing both the petition for award and the petition to determine the extent of permanent impairment, we read the Commission's conclusion (in dismissing the petition for award)— that the 1971 occurrence did not *result* in a "compensable" injury—as merely a shorthand statement that petitioner was not entitled to receive compensation benefits for the reasons, already stated in the decree, that the accident did not disable petitioner and that his subsequent complaints are of uncertain origin. This meaning becomes clear from the evidence, as recited, that shows the absence of an injury resulting from employment and the likelihood that petitioner's backache relates to a congenital condition.

The record also shows that in July of 1972 petitioner was examined by Dr. Peter H. Mason who found only a mild tenderness over petitioner's back. In addition, in September 1972, Dr. John A. Woodcock examined petitioner and noted asymmetrical facets at L–5, S–1 and lumbar lordosis (a type of curvature). Dr. Woodcock stated that he did not know whether any relationship existed between petitioner's condition and the fall in October 1971. In any event, both he and Dr. Mason testified that asymmetrical facets at L–5, S–1 were congenital. Dr. McGinn in re-examining petitioner in March 1976 made no significant new findings and again was given no history of a traumatic injury. Only Dr. Bouton, who first examined petitioner in 1973, concluded that petitioner's "present condition is directly related to the [1971] injury."

■ The Commission thus had before it competent evidence of probative value which could support or negate that petitioner's fall in 1971 resulted in an injury to him. The Commission, as the fact-finder, was entitled to resolve this factual issue based on its own judgment of the credibility of witnesses, and its own evaluation of the probabilities. More particularly, it was the prerogative of the Commission to reject the testimony of Dr. Bouton who, as the fourth doctor to be involved, did not examine petitioner until more than two years after petitioner's fall. The Commission was further justified in relying on Dr. McGinn's diagnosis showing a lack of trauma and on petitioner's failure to mention, in response to Dr. McGinn's specific inquiry about an injury to his back, his 1971 fall as bearing upon his symptoms and complaints.

The entry is:

> Appeals denied.
>
> Judgments affirmed.
> Further ordered that the Appellee pay to Appellant an allowance of $550.00 for his counsel fees, plus his reasonable out-of-pocket expenses for these appeals.

McKUSICK, C. J., did not sit.

DELAHANTY, J., sat at argument and conference but did not otherwise participate.